IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION FILE NO.3:23-cv-00167-FDW-DCK

| | |
|---|---|
| DAVID A. JOHNSON and ALDA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ITALIAN SHOEMAKERS, INC., <br><br> Defendant. | **AMENDED COMPLAINT** |

PLAINTIFFS David A. Johnson ("Johnson") and Alda, Inc. ("Alda"), through counsel, pursuant to Rule 15.(a)(1)(B) of the Federal Rules of Civil Procedure, hereby amend their complaint as to Defendant Italian Shoemakers, Inc. ("ISI"), as a matter of right, and allege as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff David A. Johnson is a citizen and resident of Lincoln County, North Carolina.

2. Plaintiff Alda, Inc. is a corporation in good standing, duly organized and existing under the laws of the state of North Carolina with its principal place of business in Lincoln County, North Carolina.

3. Defendant Italian Shoemakers Inc.is, upon information and belief, a corporation, duly organized and existing under the laws of the state of Florida, with its principal place of business in Broward County, Florida.

1

4. ISI is a manufacturer and distributor of ladies' shoes, the majority of which are manufactured in Italy and imported by ISI to the United States of America. ISI was founded by Pietro Romanelli, who at all times relevant herein was the chief executive of ISI and in control of the day-to-day operations of the company.

5. ISI sells and ships ladies shoes to customers and accounts in the state of North Carolina. At all times relevant to this complaint, ISI generated more than One Hundred Thousand Dollars of revenue on an annual basis from sales to customers and accounts in North Carolina.

6. Plaintiffs are commissioned sales representatives as defined in North Carolina General Statutes §§ 66-190, *et. seq*. This court has personal jurisdiction over Defendant pursuant to Chapter 66 § 66-192. (c) and N.C.G.S.§ 1-75.4.

7. This action arises out of an earlier lawsuit filed in the Western District of North Carolina, Charlotte Division, captioned *David A. Johnson and Alda, Inc. v. Italian Shoemakers, Inc.*, File No. 3:17-cv-00740-FDW-DSC, concerning a Consent Protective Order entered therein and a Settlement Agreement that was executed by the parties. Plaintiffs' claims arise out of the covenants and representations of the parties in this earlier lawsuit.

8. The Settlement Agreement as executed by the parties in the prior lawsuit provides that this court shall have jurisdiction to interpret and enforce its provisions.

9. This Court has subject matter jurisdiction over the claims for relief as alleged herein and because Plaintiff's damages, as are hereinafter alleged, exclusive of interest and costs, exceed Seventy-Five Thousand Dollars ($75,000.00).

10. Venue is proper in this court by the residence of Plaintiffs and the prior Settlement Agreement of the parties.

## FACTUAL ALLEGATIONS

11. Johnson was hired by ISI in 1993, to further develop and expand ISI's line of women's sandals, which, as advertised, were made exclusively in Italy.

12. During Johnson's years with ISI, he was successful in significantly expanding the revenues and profits of ISI, from approximately $2 Million to $40 Million in annual revenue.

13. In January 1999, as a result of ISI's growth, Johnson formed his own company, Alda, Inc., through which he hired or contracted his own sales personnel and office staff in Charlotte, NC, with the knowledge and consent of ISI.

14. In 2002, ISI hired a sales representative named Eve Thornton. Thornton sold ISI product from 2002 through December 2011 through Alda. Each month, Thornton would receive a draw from ISI of $12,500 with Alda contributing an additional $2,500 per month. Alda would document Thornton's customer orders to ISI.

3

15. In 2012, Johnson allowed ISI to assume direct responsibility for Thornton, who serviced large volume, low profit accounts like TJ Maxx, Marshall's and other such national accounts.

16. From January 2012 to present, Thornton operated as an independent contractor for ISI, through Thornton's corporate name, Eve, Inc. ISI assumed direct responsibility for Thornton's expense reimbursement, draws, year-end bonus, and sales activities. Alda was no longer involved.

17. In March 2017, Johnson tendered his resignation to ISI, located in Miami, Florida. Johnson resigned after a number of unsuccessful attempts to receive unpaid, earned commissions from ISI for the calendar years 2015, 2016, and 2017. Plaintiffs alleged that more than $600,000 in earned commissions remained unpaid by ISI.

18. After unsuccessful efforts to recover unpaid commissions from ISI, Plaintiffs filed suit against ISI in Mecklenburg County Superior Court on November 22, 2017. Thereafter ISI removed the lawsuit to the federal district court for the Western District of North Carolina (hereafter the "Prior Suit") on December 27, 2017.

19. In May 2018, at the request of the parties to the Prior Suit, this court signed and filed a Protective Order, which contained a number of mandatory provisions which Plaintiffs and ISI must abide, to protect confidential and proprietary information. (Case 3:17-cv-00740-FDW-DSC Document 10.)

20. The Prior Suit progressed through pre-trial discovery during 2018, as well as mediation and dispositive motions. The Prior Suit was scheduled to be tried during a term of court beginning November 5, 2018. Plaintiffs and Defendant prepared and filed all pre-trial motions, jury instructions, witness and exhibit lists pursuant to the court's scheduling order.

21. The trial of the Prior Suit was continued to a January 7, 2019 term of court due to an unavoidable scheduling conflict of the presiding judge.

22. In December 2018 and continuing into January 2019, the parties in the Prior Suit engaged in settlement negotiations, which resulted in a settlement proposal from Defendant that was accepted by Plaintiffs.

23. The terms of the parties' settlement were recited in a document captioned "CONFIDENTIAL SETTLEMENT AND RELEASE AGREEMENT" dated January 7, 2019 (hereafter "Settlement Agreement"). The Settlement Agreement contained the following provisions that are relevant to Plaintiffs' stated claims:

### 3. Mutual Releases.

(b) Italian Shoemakers, on behalf of itself and its officers, directors, shareholders, employees, affiliates, agents, predecessors, successors and assigns (collectively the **"Defendant Releasor"**), hereby irrevocably and unconditionally releases and forever discharges Johnson and ALDA and their respective officers, directors, shareholders, employees, affiliates, agents, predecessors, successors, heirs and assigns (collectively the **"Plaintiff Releasees"**) from any and all claims, demands, causes of action, suits, losses, liabilities, costs, expenses, (including attorneys' fees) and damages of any kind or nature, whether known or unknown, in law or in equity, that the Defendant Releasor ever had, may have had or may now have against the Plaintiff Releasees, including, but not limited to, any claim arising from or related to the Claim or the Action or the subject matter thereof, whether known or unknown, including, without

5

limitation, any claims relating to the Claim and the Action or the subject matter thereof, except as is specifically reserved in this Agreement.

(c).... The release and waiver of claims set forth in this Agreement is intended to be global and complete except as reserved herein.

24. Defendant ISI, by and through its CEO, Pietro Romanelli, executed the Settlement Agreement and a notice of dismissal with prejudice was filed by Plaintiffs, both occurring on January 7, 2019.

25. On March 22, 2020, Plaintiffs were served with a complaint and summons filed by Eve Thornton and her sales entity, Eve, Inc., in a state court in Greenville, South Carolina. The gist of Thornton's complaint was that while working as a commissioned sales representative in 2011, Johnson and Alda had withheld and converted monies received from ISI, and representing Alda's commissions (including commissions generated by Thornton) for calendar year 2011, which would have typically been paid and received in the first or second quarter of 2012.

26. Prior to March 22, 2020, Plaintiffs had no prior knowledge or information that Thornton intended to file suit against Plaintiffs on the basis that Plaintiffs had taken and converted commissions otherwise due and payable to Thornton. No prior notice or demand had been communicated and received from Thornton.

27. On the contrary, as of March 22, 2020, Plaintiffs had every reason to rely on and believe that they had received a complete release from ISI and its agents and representatives from all omissions and commissions prior to January 7, 2019.

28. Upon receiving expense reimbursements from ISI, Alda would reimburse itself for all expenses it had paid during the prior year or years, including expenses attributable to Thornton. If due and payable, ISI would also calculate what commissions (bonus) were due Alda and Thornton for the time period in question, based upon then-current agreements.

29. ISI took Thornton in-house as of January 2012 simply to save sales commissions. Thornton exclusively serviced large nationwide accounts, such as Marshalls and TJ Maxx, and generated significant sales.

30. When Pietro Romanelli made the decision to sever Thornton's relationship with Alda, and compensate Thornton directly, beginning in 2012, Romanelli and ISI decided what commissions would be paid and not paid, for sales occurring in 2011. Alda played no role in Thornton's monthly draws and bonus for any year after 2011.

31. For sales made by Thornton to TJ Maxx in 2011, ISI decided in early 2012 that it would not pay commissions on those sales to Alda (and through Alda to Thornton). Romanelli made that decision without the participation of Alda or Thornton.

32. Alda did not take, convert, or receive any percentage of Thornton's commissions or bonus that ISI unilaterally failed to pay Thornton on 2011 product sales.

33. On March 23, 2020, Plaintiffs sent written notice to ISI's attorney of record, Ward & Smith, P.A., in the Prior Action, that Plaintiffs had been served with a lawsuit filed by Thornton and

7

pending in South Carolina state court, in part on the basis that at the time the Settlement Agreement was executed on January 7, 2019, Thornton was an agent, affiliate and sales representative for ISI and that all asserted and unasserted claims were waived and released as of January 7, 2019, including those being asserted by Thornton against Plaintiffs.

34. The only response received from ISI to Plaintiffs' March 23, 2020, letter was a letter from Florida counsel, stating "Your letter requires no further response."

35. Based solely upon the documents that Thornton obtained from Pietro Romanelli in May and June of 2018, Thornton filed suit in Greenville, South Carolina in March 2020. A subsequent Amended Complaint was filed in the U.S.D.C for South Carolina, Greenville Division on April 16, 2020. See *Eve Thornton and Eve, Inc., v. Dave Alfred Johnson & Alda, Inc.,* 6:20-cv-01449-DCC (the "S.C. Action).

36. Thornton clearly alleges in her Amended Complaint that she was involved in the Prior Action as "a witness and/or deponent." (¶ 12., pg. 3) She repeatedly alleges that in that capacity, she "became privy to several documents from the case "and "learned the shocking truth" that Alda and Johnson had stolen commissions that were earmarked for her. (¶ 14. pg. 4)

37. In her deposition on December 14, 2021 in the S.C. Action, Thornton went into greater detail as to when and how she obtained confidential commissioned sales spreadsheets from Pietro Romanelli and in direct violation of this court's Protective Order, entered by Magistrate Judge Cayer on May 10, 2018.

8

38. Eve Thornton testified under oath as follows regarding the confidential documents she obtained from Romanelli and ISI in violation of this court's order:

   (a) Romanelli discussed with me more than 10 times in 2018 about what he claimed Alda did or didn't pay to Thornton in commissions and expenses. (Transcript, pgs. 122-123);
   (b) In May 2018, Romanelli had been gathering everything he could, during a meeting, he gave me ISI commission statements alleging showing what ISI had Paid in commissions; (Transcript pgs. 124-125)
   (c) I am relying on the commission statements Romanelli gave me in my allegations of what Alda/Johnson stole from me; (Transcript pgs. 126)
   (d) Thornton was never given or provided with a confidentiality order (or anything to sign) regarding the commission statements Romanelli gave her; (Transcript pgs. 126)
   (e) Romanelli never told me of any confidentiality obligations I had with regard to the statements he gave me; (Transcript pgs. 126)
   (f) Romanelli never advised me that I had a duty to return any of the documents that he gave to Thornton; (Transcript pgs. 126); and
   (g) In asserting her claims against Alda and Johnson, Thornton is relying "solely on representations made to [Thornton] by Pietro Romanelli and the commission statements he provided." (Transcript pg. 189)

39. The year-end commission statements that Romanelli gave Thornton in May-June 2018 were inaccurate and incomplete. They did not include the $294,054.98 in T.J. Maxx commissions that ISI simply eliminated at the end of 2011. Romanelli made it appear Alda had eliminated those commissions or that Alda had received Thornton's T.J. Maxx commissions but refused to forward to Thornton.

40. Romanelli was infuriated that Plaintiffs had filed suit against ISI in December 2017. Thornton testified under oath in December 2021 that:

   (a) Romanelli was consumed by Johnson/Alda's lawsuit (Transcript pg. 242);
   (b) Romanelli was angry at Johnson for filing lawsuit (Transcript pg. 243); and
   (c) The whole year (2018) Romanelli was volatile and angry (Transcript pg. 244).

9

41. Romanelli's plan was to incite Thornton to file a separate lawsuit against Plaintiffs and he executed this plan by June 2018, more than six months before he signed a mutual, general release on behalf of ISI, its employees, agents, and representatives.

42. In furtherance of this plan, Romanelli told Thornton that ISI had paid one hundred percent of all commissions that were due and owing to Alda and Thornton for 2011 and that everything shown on ISI's year-end commission statements had been paid out by ISI.

43. According to Thornton in her deposition, Romanelli told her that Plaintiffs were withholding Thornton's commissions, commissions that ISI had already paid to Alda on Thornton's behalf. (Transcript pg. 126)

44. Thornton testified under oath that Romanelli told her in 2018 that all the money paid by ISI to Alda for Eve's accounts was supposed to go directly to Thornton, and that Alda/Johnson had stolen it. (Transcript pg. 324)

45. Romanelli made repeated, material, and false statements to Thornton during the last eight months of 2018 in an attempt to provoke Thornton into filing suit against Alda and Johnson.

46. All of Romanelli's false statements to Thornton were made with the intent to deceive Thornton into believing that she had suffered substantial monetary damages by reason of Alda and Johnson's concealment and theft of her commissions, and that Thornton should file suit against Alda and Johnson.

47. ISI's material and false representations to Thornton in 2018 did, in fact, deceive Thornton into believing that she had substantial monetary claims against Alda and Johnson and did, in fact, cause her to file suit against Alda and Johnson.

48. Thornton's lawsuit against Alda and Johnson in March 2020 was based entirely on the false and misleading statements that Romanelli, on behalf of ISI, had spoon-fed to Thornton, beginning in May or June of 2018.

49. ISI knew, or should have known, when it executed a Confidential Settlement and Release Agreement on January 7, 2019, that Thornton and Eve, Inc. would file suit against Alda and Johnson, based upon the false statements, misrepresentations, and repeated efforts by Romanelli to incite Thornton since May or June of 2018.

50. Despite ISI's express or imputed knowledge of Thornton's intent to bring suit, ISI utterly failed to communicate to Alda or Johnson the fact that Romanelli had grossly misrepresented Thornton's entitlement to unpaid commissions from Alda and the real likelihood that Thornton would be bringing suit against Plaintiffs.

51. The sole reason that Thornton sued Alda and Johnson in March 2020 was Romanelli's deliberate and successful plan in falsely convincing Thornton that Alda stole more than $300,000 in commissions that Alda had received from ISI.

52. At the time that the Prior Suit was settled and mutual releases executed by the parties, neither Alda nor Johnson was on notice that Romanelli had been sharing Confidential Documents with Thornton, in violation of the court's Protective Order or encouraging Thornton to pursue legal relief against Alda and Johnson for allegedly withholding commissions.

## FIRST CLAIM FOR RELIEF

(Breach of Contract)

53. The preceding allegations are incorporated herein by reference.

54. The Prior Suit between the parties, filed by Plaintiffs on November 22, 2017, was ultimately settled pursuant to a contract or agreement captioned "Confidential Settlement and Release Agreement", (hereafter "Settlement Agreement") which was executed by Defendant ISI on January 7, 2019.

55. The purpose or intent of the Settlement Agreement was to avoid "the risk and uncertainty of litigation" by resolving "all things and matters in controversy between them, including all issues pertaining in any way to the Claim or the Action, and all other related issues in accordance with the provisions of this Agreement."

56. The provisions of this Settlement Agreement, as stated by the parties, included ISI's purported release of all claims on behalf of its "employees, affiliates, agents, predecessors, successors, and assigns." Reference is made to the preceding paragraph in which the scope of ISI's mutual release is alleged (¶ 23.)

57. At the time ISI executed the Settlement Agreement, as alleged herein, ISI and its officers, directors, and shareholders, including Pietro Romanelli, had an apparent and implied duty not to intentionally provoke and incite one of its agents and sales representatives to file suit against Plaintiffs based upon nonpayment of sales commissions, the very subject matter of the Prior Action.

58. At the time ISI executed the Settlement Agreement, it knew it had falsely advised Thornton that Plaintiffs had stolen from her and that she should pursue recovery of those sales commissions that Plaintiffs had unlawfully withheld.

59. In the alternative, should this court decide and rule that the Protective Order entered in the Prior Action was entered by and with the consent of the parties, ISI has breached that order by providing confidential year-end commission statements to Thornton in 2018 without complying with the terms and conditions restricting such release and retrieving confidential documents and information.

60. ISI breached the Settlement Agreement by expressly releasing Plaintiffs on behalf of all ISI agents, affiliates, and representatives, when it knew or should have known that ISI, through its CEO and owner had purposely exerted its efforts in 2018 to convince Thornton to pursue claims for monetary damages against Plaintiffs.

61. ISI breached the Settlement Agreement by failing to disclose to Plaintiffs its efforts and attempts to convince Thornton to pursue legal action against Alda and/or Johnson, which efforts were antithetical to the releases given and promised by ISI to Plaintiffs.

62. ISI breached the Settlement Agreement by failing to advise Thornton that ISI had resolved all of Plaintiffs' claims against it in the Prior Action, and was prepared to enter into binding, mutual releases with Plaintiffs and on behalf of its employees, agents, affiliates, and representatives.

63. Plaintiffs have been injured and damaged by ISI's acts and omissions, as alleged herein, in an amount in excess of Seventy-five Thousand Dollars ($75,000.00) by the necessity of defending themselves in the pending Thornton lawsuit in federal district court in South Carolina, including significant hours complying with pretrial discovery, court requirements and deadlines, and payment of thousands of dollars in counsel fees in that lawsuit and in bringing this lawsuit against ISI.

## SECOND CLAIM FOR RELIEF

(Breach of Implied Covenant of Good Faith and Fair Dealing)

64. The preceding allegations are incorporated herein by reference.

65. By executing the Settlement Agreement on January 7, 2019, ISI promised an implied covenant of good faith and fair dealing that it would refrain from doing anything which injures or impairs the right of the adverse party to receive the benefits conferred by the Settlement Agreement.

66. ISI impliedly represented to Plaintiffs in the Settlement Agreement that any and all claims related to the parties were being compromised and settled, not only on behalf of the Defendant corporation, but including its "employees, affiliates, agents, predecessors, successors, and assigns."

67. At the time ISI executed the Settlement Agreement, it had reason to know that its direct sales representative since 2012 had been advised and counseled by ISI's chief executive officer and owner that Plaintiffs had stolen her money by keeping her commissions, which, in fact, included approximately $300,000 that ISI had never paid to Thornton or Plaintiffs or to any third party.

68. At the time ISI executed the Settlement Agreement, it knew or should have known that Plaintiffs were entering into that Agreement with the knowledge and belief that no claims would survive its execution, as between the parties and their employees, agents, affiliates, assigns and sales representatives.

69. At the time ISI executed the Settlement Agreement, it knew that the principal benefits of that Agreement to Plaintiffs included the payment of compensation and an end to any and all litigation between the parties and among their employees, agents, affiliates, assigns and sales representatives.

70. ISI breached its implied covenant of good faith and fair dealing by its false representations to Eve Thornton, as alleged herein, and by executing the Settlement Agreement, as worded,

15

without confirming the effect of its mutual releases with Thornton before execution, and/or by its failure to place Plaintiffs on notice of its repeated attempts during 2018 to incite Thornton to file suit against Plaintiffs.

71. Plaintiffs have been injured and damaged by ISI's acts and omissions, as alleged herein, in an amount in excess of Seventy-five Thousand Dollars ($75,000.00) by the necessity of defending themselves in the pending Thornton lawsuit in federal district court in South Carolina, including significant, ongoing hours complying with pretrial discovery, dispositive motions, depositions, payment of more than One Hundred Thousand Dollars in counsel fees in the S.C. Lawsuit and in addition to counsel fees in bringing this lawsuit against Defendant ISI.

## THIRD CLAIM FOR RELIEF

(Fraud in the Inducement)

72. The preceding allegations are incorporated herein by reference.

73. Prior to Defendant's execution of the Settlement Agreement on January 7, 2019, and beginning in June 2018, ISI engaged in a course of conduct wherein it made false representations to its agent, representative, and/or employee, Eve Thornton, that Plaintiffs had defrauded Thornton out of earnings and commissions, for the time period 2002 through 2011, by stealing over $1 Million Dollars of commissions properly owed to Thornton.

74. Beginning in June 2018 and continuing thereafter, ISI, through its president and founder, Pietro Romanelli, engaged in a course of conduct to convince Thornton that because of

16

Plaintiffs' conduct defrauding her of as much as $1 Million Dollars, Thornton should hire counsel and file a lawsuit against Plaintiffs Johnson and Alda, to recover monies that ISI was contending were fraudulently stolen from Thornton by Plaintiffs.

75. At the time that Romanelli signed the Settlement Agreement on behalf of ISI on January 7, 2019, Defendant knew that it had falsely convinced Thornton that Plaintiffs had stolen up to $1 Million Dollars of commissions due and owing to Thornton from 2002 through 2011 and that Thornton should hire a lawyer and sue Plaintiffs to recover those monies.

76. At no point in time from June 2018 through January 7, 2019, did ISI or its officers and/or directors inform Plaintiffs that it had shared false and misleading documentation with Thornton purportedly showing that Plaintiffs had withheld and/or converted one million dollars in commissions otherwise due and payable to Thornton from 2002 through 2011.

77. On January 7, 2019, Romanelli signed the Settlement Agreement on behalf of ISI and its agents, representatives and/or employees, including Eve Thornton.

78. Thornton did, in fact, file suit against both Defendants, falsely claiming that Johnson and Alda had stolen more than $1 Million Dollars of her commissions from 2002 through 2011. Thornton's lawsuit would not have been filed but for the belated campaign that Romanelli initiated in 2018 and continued thereafter on behalf of ISI, until Thornton filed suit against Plaintiffs.

79. ISI took material steps to conceal the likelihood of litigation by Thornton from Plaintiffs in that it left Plaintiffs to believe, reasonably, that Thornton would have no reason to want

to sue them, while ISI was secretly feeding Thornton false information, inciting Thornton to believe she had claims against Plaintiffs.

80. In the course of negotiating the Settlement Agreement, ISI had a duty to disclose facts within its knowledge indicating that Thornton believed she had claims against Plaintiffs or was planning a lawsuit against Plaintiffs.

81. ISI took material steps to conceal the fact that it had disclosed confidential year-end documents, prepared for the benefit of Alda, Inc, that were false and erroneous, purporting to show that Alda had received $1 Million Dollars or more that was due and payable to Thornton as earned commissions.

82. While negotiating and drafting the Settlement Agreement, ISI failed to disclose the past and existing facts within its knowledge that Eve had been convinced that she had claims against Plaintiffs and/or was planning a lawsuit against Plaintiffs.

83. ISI knew that Plaintiffs were unaware of these facts, or was recklessly indifferent as to whether Plaintiffs were aware of such facts.

84. ISI intended to deceive Plaintiffs by failing to make these disclosures.

85. Plaintiffs reasonably relied on ISI's omissions by entering into the Settlement Agreement, because Plaintiffs would not have entered into the Settlement Agreement, as written, if they had known about Thornton's prospective claims or if they had known that ISI had secretly shown false and misleading commission report(s) that ISI knew to be false and inaccurate.

18

Plaintiffs had no reason to know or suspect that either of these facts were true at the time they entered into the Settlement Agreement.

86. Ultimately, Thornton did, in fact, file a lawsuit against Plaintiffs in Greenville County South Carolina approximately one year after the Settlement Agreement was signed by ISI. Thornton's lawsuit sought the very damages that ISI had advocated for in 2018 and which ISI continued to encourage and advocate for after ISI signed the Settlement Agreement on January 7, 2019, despite an implied covenant that ISI would refrain from doing so.

87. Plaintiffs have incurred actual injury and damage by reason of ISI's fraudulent inducement in an amount in excess of $125,000.

**WHEREFORE**, Plaintiffs pray for relief as follows:

1. That judgment be entered against Defendant in an amount supported by the evidence;
2. That Plaintiffs be awarded such attorney fees as is provided by law;
3. That all costs and interest be taxed against Defendant; and
4. For such other and further relief as this Court deems just and proper.

This 14th day of June 2023.


 /s/ William L. Sitton, Jr.
William L. Sitton, Jr.
Attorney for Plaintiffs
N.C. State Bar No.8508
wsitton@wsittonlaw.com

**LAW OFFICE OF WILLIAM L. SITTON, JR.**
2300 East Seventh Street
Suite 100
Charlotte, NC  28204-3313