UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:23-CV-00167-FDW-DCK

| | | |
|---|---|---|
| DAVID A. JOHNSON AND ALDA, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ITALIAN SHOEMAKERS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant's "Motion for Summary Judgment, or Alternative Motion for Judgment on the Pleadings," (Doc. No. 31).  This matter has been fully briefed, (Doc. Nos. 32, 35, 36, 37, 38, 41), and is ripe for ruling.   In addition, the parties filed a Joint Motion for Extension of Time, (Doc. No. 42).  For the reasons set forth below, Defendant's Motion is GRANTED IN PART AND DENIED IN PART and the Joint Motion is GRANTED IN PART AND DENIED IN PART.

## I.  Background

Plaintiffs worked for Defendant from about 1993 through about March 2017 as a commissioned sales representative, and the parties entered into various agreements over that time period regarding the payment of commissions to Plaintiffs.  Plaintiffs ultimately terminated their sales representative relationship with Defendant in March 2017.  A dispute arose among the parties after Plaintiffs asserted Defendant owed them unpaid commissions.  Defendant denied owing any commissions, and in November 2017, Plaintiffs filed suit against Defendant.

In 2018, Defendant asked its employee Eve Thornton to gather documents in her possession—including commission statements for herself and Plaintiff Johnson—for purposes of

1

providing discovery responses.  Thornton had worked for Plaintiffs from 2002 to 2011, when she left that employment and began working directly for Defendant.

As the trial date approached in that suit, the parties reached an agreement to resolve their dispute.  On January 7, 2019, the parties entered into a Settlement Agreement "to resolve, fully and finally, all things and matters in controversy between them, including all issues pertaining in any way to the Claim or Action, and all other related issues in accordance with the provisions of [the] Agreement."  (Doc. No. 30, p. 2.)  The Settlement Agreement provided, among other things, that Defendant would pay a sum of money in exchange for the parties' release and discharge of claims.  In the "Mutual Releases" section, the Settlement Agreement provided:

> Johnson and ALDA, each on behalf of himself and/or itself and including the officers, shareholders, employees, affiliates, agents, predecessors, successors and assigns of ALDA and the heirs and assigns of Johnson (collectively "Plaintiff Releasors"), hereby irrevocably and unconditionally release and forever discharge Italian Shoemakers and its officers, directors, shareholders, employees, affiliates, agents, predecessors, successors, and assigns (collectively "Defendant Releasees") from and of any and all claims, demands, causes of action, suits, losses, liabilities, costs, expenses (including attorneys' fees) and damages of any kind or nature, whether known or unknown, in law or in equity that Plaintiff Releasors ever had, may have had or may now have against the Defendant Releasees, including but not limited to, any claim arising from or related to the Claim or the Action or the subject matter thereof, whether known or unknown, including, without limitation, any claims relating to the Claim and the Action or the subject matter therefor, except as is specifically reserved in this Agreement.

(Doc. No. 30, p. 4.)  Defendant, likewise, "on behalf of itself and its officers, directors, shareholders, employees, affiliates, agents, predecessors, successors and assigns" agreed to release and discharge Plaintiffs under identical terms.  (Id., pp. 4-5.)  The Settlement Agreement further stated, "The release and waiver of claims set forth in this Agreement is intended to be global and complete except as is reserved herein."  (Id. p. 5.)  In the section entitled "No Admission of Liability," the parties reiterated their agreement "that the Settlement Amount is in full settlement of any and all claims, known or unknown, Plaintiffs may have against Defendant . . . . [and] the

2

payment of the Settlement Amount is not an admission of liability or an admission as to any of the claims . . . but is made solely in order to compromise disputed claims for the purpose of avoiding further litigation." (Id. pp. 7-8.) The Settlement Agreement also contained a confidentiality provision, which provided, in part, "The existence and terms of this Agreement shall remain confidential and shall not be disclosed by any party or their counsel or other representative except as required by law or with the prior written consent of all Parties hereto . . . ." (Id. p. 5.) The Settlement Agreement also contained a "Non-Disparagement" clause agreeing that all parties would not make "any critical, defamatory, slanderous, libelous, adverse, negative, derogatory, or disparaging statement, comment, or implication to any third party about each other. (Id. p. 6.) The parties also agreed to instruct their officers, employees, managers and sales representatives from making these disparaging remarks. (Id.)

In May 2019 and after the parties entered into the Settlement Agreement, Thornton requested Defendant provide her copies of the commission statements from 2002 through 2011. According to Defendant, Thornton did not state a reason for her request, and Defendant did not ask. According to Plaintiffs, Defendant "initiated a campaign to convince Thornton that Plaintiffs had stolen" some of her commissions. (Doc. No. 36, p. 2.) Defendant provided the commission statements to Thornton, as well as a spreadsheet summarizing her commissions. On March 10, 2020, Thornton filed suit against Plaintiffs for unpaid commissions.

Plaintiffs filed this action seeking to recover for Defendant's alleged breach of the Settlement Agreement.[1] In sum, Plaintiffs contend Defendant violated its obligation by encouraging and supporting Thornton's efforts to file suit against Plaintiffs and making

---

[1] This Court dismissed Plaintiffs' claims for breach of contract, breach of implied covenant and fair dealing, and fraudulent inducement claims to the extent they relied on alleged misconduct associated with the protective order in the prior litigation. (Doc. No. 34.) The Court also dismissed the fraudulent inducement claim as it pertains to the Settlement Agreement. (Id.)

3

disparaging remarks about Plaintiffs to Thornton.  Defendant now seeks summary judgment on Plaintiffs' claims for breach of contract and breach of implied covenant of good faith and fair dealing.[2]

## II.  Standard of Review

Summary judgment is appropriate if the pleadings, depositions, answers, admissions, stipulations, affidavits, and other materials on the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a)&(c).  In considering summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and cannot weigh the evidence or make credibility determinations.  Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016) (citations omitted).

Under North Carolina law, a breach of contract claim involves two elements: (1) the existence of a valid contract and (2) breach of the terms of that contract. McLamb v. T.P. Inc., 619 S.E.2d 577, 580 (N.C. Ct. App. 2005); Poor v. Hill, 530 S.E.2d 838, 845 (N.C. Ct. App. 2000).  A settlement agreement is a contract, to be interpreted according to established rules governing contracts.  See, e.g., Smith v. Young Moving & Storage, Inc., 606 S.E.2d 173, 177 (N.C. Ct. App. 2004); Harris v. Ray Johnson Constr. Co., 534 S.E.2d 653, 654 (N.C. Ct. App. 2000)

"Where parties have executed a written contract, an action for breach of the covenant of good faith and fair dealing is part and parcel of a claim for breach of contract."  Michael Borovsky

---

[2] Defendant moves for summary judgment and "alternatively" for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Because both parties submitted evidence in support of their respective position, the Court concludes evaluation under Rule 56—and not Rule 12—is appropriate, particularly given this stage of litigation where discovery has taken place and closed.  Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

4

Goldsmith LLC v. Jewelers Mut. Ins. Co., 359 F. Supp. 3d 306, 313 (E.D.N.C. 2019) (collecting cases). "North Carolina law recognizes a separate claim for breach of an implied covenant of good faith and fair dealing only in limited circumstances involving special relationships between parties, [such as] cases involving contracts for funeral services and insurance. Outside such circumstances, actions for breach of good faith fail." Michael Borovsky Goldsmith, 359 F. Supp. 3d at 313–14 (quoting Ada Liss Grp. v. Sara Lee Corp., No. 1:06-CV-610, 2009 WL 3241821, at *13 n.10 (M.D.N.C. Sept. 30, 2009) (unpublished) (quotation omitted), report and recommendation adopted by 2010 WL 3910433 (M.D.N.C. Apr. 27, 2010) (unpublished)).

### III. Analysis

Turning first to Plaintiffs' breach of contract claim, the parties agree the Settlement Agreement constitutes a valid and enforceable contract. Defendant argues it is entitled to summary judgment because Plaintiffs fail to identify what Settlement Agreement provision Defendant breached and fail to provide sufficient evidence to demonstrate any breach of the Settlement Agreement. The Court agrees in part and disagrees in part.

The evidence before the Court indicates genuine disputes of material facts as to whether Defendant breached the "Confidentiality" and "Non-Disparagement" provisions of the Settlement Agreement. Plaintiffs present both circumstantial and some direct evidence from Thornton that tends to show that *after* the parties signed the Settlement Agreement in 2019, Defendant provided Thornton with information that may have breached the confidentiality and/or non-disparagement provisions of the Settlement Agreement. The Court acknowledges Defendant's substantial evidence to the contrary, including sworn testimony that Defendant and its owner did not encourage or play any role in encouraging Thornton to file a lawsuit and did not make disparaging remarks about Plaintiffs. Resolution of these disputed issues depends on the credibility and weight

5

of the evidence, which is not appropriate for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment"). The Court will deny Defendant's motion in part, and Plaintiff can proceed to a bench trial to present its evidence on the alleged claims that Defendant violated the Settlement Agreements' Confidentiality and Non-Disparagement clauses. In so ruling, the Court rejects Defendant's argument that the release provision in the Settlement Agreement bars Plaintiffs' claims for breach of the Settlement Agreement. Paragraph 9(d) of the Settlement Agreement clearly expresses the parties' intent to preserve their rights to enforce the Settlement Agreement. (Doc. No. 30, p. 8.)

The issues for trial, however, are limited. To the extent Plaintiffs rely on conduct that occurred in 2018 and prior to execution of the Settlement Agreement, any alleged wrongdoing is waived in the release provisions contained in the Settlement Agreement. The release provisions make clear the parties' intent to specifically waive the ability to assert claims that existed prior to or at the time of the parties' execution of the Settlement Agreement. See DeRose for Est. of DeRose v. DoorDash, Inc., 675 F. Supp. 3d 591, 605 (E.D.N.C. 2023) (Under North Carolina law, "A release is a private agreement amongst parties which gives up or abandons a claim or right to the person against whom the claim exists or the right is to be enforced or exercised. A valid release operates as a merger of, and bars all right to recover on, the claim or right of action included therein, as would a judgment duly entered in an action between said persons." (cleaned up)).

To the extent Plaintiffs contend Defendant provided information to support Thornton's litigation or made disparaging remarks in 2018, such conduct could not have been violative of the Settlement Agreement, which was not executed until January 2019. Indeed, it is impossible to

prove Defendant "breached" an agreement that did not yet exist. There is no genuine dispute on this portion of Plaintiffs' claims, and Defendant is entitled to partial summary judgment as a matter of law. Accordingly, the Court will limit any evidence as to breach of the Settlement Agreement to conduct that occurred after executing of the Settlement Agreement on January 7, 2019.

Finally, the Court also concludes Defendant is entitled to summary judgment on Plaintiff's claim for breach of contract of Paragraph 3(b) and breach of the implied covenant of good faith and fair dealing. In opposing the instant motion, Plaintiffs reference a specific provision in the Settlement Agreement—Paragraph 3(b)—which makes clear their allegations and evidence to support this claim are encompassed in its breach of contact claim. Plaintiffs have not forecast any evidence to support their claim that Defendant breached Paragraph 3(b) of the Settlement Agreement or to support their claim that they did not receive the benefit of the bargain in executing the Settlement Agreement. Furthermore, the parties agree the Settlement Agreement's provisions could not bind any third parties; and Plaintiffs have not directed the Court to any authority to support their claim that Defendant owed any duty to alert Plaintiffs to potential claims by Thornton prior to entering the Settlement Agreement. Accordingly, Plaintiffs' claim here is misplaced, and Defendant is entitled to summary judgment on these claims.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment, (Doc. No. 31), is DENIED IN PART as to Plaintiffs' claims for breach of the Settlement Agreements' Confidentiality and Non-Disparagement clauses subject to the ruling above and GRANTED IN PART as to all other claims.

**IT IS FURTHER ORDERED** that the parties Joint Motion for Extension of Time is GRANTED IN PART AND DENIED IN PART. The parties shall submit jointly-prepared pretrial submission in accordance with this Court's Standing Orders and the Case Management Order by

June 24, 2024.  All motions in limine shall be filed no later than June 24, 2024, with responses due by June 28, 2024.

**IT IS FURTHER ORDERED** that the parties shall appear for docket call on July 8, 2024, and a pretrial conference immediately following docket call.

**IT IS SO ORDERED.**

Signed: June 11, 2024

Frank D. Whitney
United States District Judge