UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:23-CV-00167-FDW-DCK

| | |
|---|---|
| DAVID A. JOHNSON AND ALDA, INC., | ) |
| Plaintiffs, | ) |
| v. | ) **ORDER AND JUDGMENT** |
| ITALIAN SHOEMAKERS, INC., | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court following a bench trial on the issue of whether Defendant Italian Shoemakers, Inc., is liable to Plaintiffs David A. Johnson and Alda., Inc., (collectively, "Plaintiffs") for breach of contract and, if so, what amount of damages are Plaintiffs entitled to recover. For the reasons that follow, the Court concludes no, Defendant is not liable because Plaintiffs failed to prove a breach of contract by a preponderance of the evidence. Pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure, the following constitutes the Court's findings of fact and conclusions of law.

## I. FINDINGS OF FACT

The following findings of fact are made based on the preponderance of the evidence, including the testimony from the three witnesses at trial: David Johnson, President of Plaintiff Alda, Inc.; Eve Thornton, a former employee of both Alda and Defendant; and Pietro Romanelli, President of Defendant; as well as the exhibits admitted at trial, (Doc. Nos. 56, 57). Importantly, Plaintiffs never sought admission at trial of the Confidential Settlement and Release Agreement ("Settlement Agreement"), which was listed on Plaintiffs' exhibit list as Exhibit 1, (Doc. No. 47), and is the operative contract at issue for their breach of contract claim. Nevertheless, the parties'

1

jointly-prepared proposed pretrial order stipulated to the Settlement Agreement's authenticity and admissibility and also to the undisputed language contained in the provisions Plaintiffs contend Defendant breached. Although the significance of Plaintiffs' failure to admit the Settlement Agreement at trial is addressed below in the conclusions of law, the Court will nevertheless include findings of fact related to the existence of the Settlement Agreement and its relevant terms using the Settlement Agreement document that Plaintiffs filed on the docket in connection with their response to summary judgment. (<u>See</u> Doc. Nos. 28, 30.)

In a prior lawsuit, Plaintiffs in this case—Johnson and Alda—sued Defendant in this case—Italian Shoemakers—for unpaid commissions, and on January 7, 2019, all three parties entered into a Settlement Agreement "to resolve, fully and finally, all things and matters in controversy between them, including all issues pertaining in any way to the Claim or Action, and all other related issues in accordance with the provisions of [the] Agreement." (Doc. No. 30, p. 2.) The Settlement Agreement provides, among other things, that Defendant would pay a sum of money in exchange for the parties' release and discharge of claims. In the "Mutual Releases" section, the Settlement Agreement provides:

> Johnson and ALDA, each on behalf of himself and/or itself and including the officers, shareholders, employees, affiliates, agents, predecessors, successors and assigns of ALDA and the heirs and assigns of Johnson (collectively "Plaintiff Releasors"), hereby irrevocably and unconditionally release and forever discharge Italian Shoemakers and its officers, directors, shareholders, employees, affiliates, agents, predecessors, successors, and assigns (collectively "Defendant Releasees") from and of any and all claims, demands, causes of action, suits, losses, liabilities, costs, expenses (including attorneys' fees) and damages of any kind or nature, whether known or unknown, in law or in equity that Plaintiff Releasors ever had, may have had or may now have against the Defendant Releasees, including but not limited to, any claim arising from or related to the Claim or the Action or the subject matter thereof, whether known or unknown, including, without limitation, any claims relating to the Claim and the Action or the subject matter therefor, except as is specifically reserved in this Agreement.

2

(Doc. No. 30, p. 4.) Defendant, likewise, "on behalf of itself and its officers, directors, shareholders, employees, affiliates, agents, predecessors, successors and assigns" agreed to release and discharge Plaintiffs under identical terms. (Id., pp. 4-5.) The Settlement Agreement further states, "The release and waiver of claims set forth in this Agreement is intended to be global and complete except as is reserved herein." (Id. p. 5.)

The Settlement Agreement also contains two provisions, which Plaintiffs contend Defendant breached. Paragraph 4(a) provides:

> **4. Confidentiality**.
>
> (a) The existence and terms of this Agreement shall remain confidential and shall not be disclosed by any party or their counsel or other representative to anyone except as required by law or with the prior written consent of all Parties hereto, except as may be necessary for confidential consultation with financial advisors, accountants and/or legal counsel and as set forth below. The Parties will not make statements in any form of electronic or "social media", make any public comment, or provide a statement to any member of the media regarding the existence or terms of this Agreement unless required by law to do so.

(Doc. No. 30, p. 5; hereinafter "Confidentiality Provision.")

Paragraph 5 contains a non-disparagement provision:

> **5. Non-Disparagement**. The Parties acknowledge and agree that Plaintiffs and Defendant and its subsidiaries and affiliates have a significant interest in protecting their reputation and public trust, maintaining good public relations with their customers, prospective customers, vendors and others in their market areas, and maintaining good relationships with their current and prospective employees or sales representatives; and that it is in Plaintiffs' and Defendant's mutual best interests to characterize their relationship in a positive light. Plaintiff Johnson shall not make, and Plaintiff ALDA shall instruct is officers, employees, managers and sales representatives to refrain from making, any critical, defamatory, slanderous, libelous, adverse, negative, derogatory, or disparaging statement, comment, or implication, whether oral or written (including but not limited to via e-mail, web log, posting on any "social media" website such as Facebook, LinkedIn, Twitter, Snapchat or Instagram, or on any other internet-based medium), to any third party about Defendant or any of their respective officers, owners, shareholders, principals, agents, affiliates, subsidiaries, successors, family members or predecessors, or about any of their personal or business-related practices or relationships. Defendant shall instruct its officers, employees, managers and sales

3

representatives to refrain from making any critical, defamatory, slanderous, libelous, adverse, negative, derogatory, or disparaging statement, comment, or implication, whether oral or written (including but not limited to via e-mail, web log, posting on any "social media" website such as Facebook, LinkedIn, Twitter, Snapchat or Instagram, or on any other internet-based medium), to any third party about Plaintiffs or their personal or business-related practices or relationships. If any party is questioned about the litigation, the party is permitted to issue a statement that provides only as follows "[t]he case was amicably resolved."

(Doc. No. 30, p. 6; hereinafter "Non-Disparagement Provision.") The Settlement Agreement is signed by David A. Johnson, individually and as President for Alda, and Peitro Romanelli as President for Italian Shoemakers. (Id., pp. 10–12.)

In March 2020, Eve Thornton filed a lawsuit against Plaintiffs seeking to recover for unpaid commissions from Plaintiffs. Plaintiffs subsequently filed this lawsuit alleging Defendant breached these provisions when Defendant's President Pietro Romanelli made certain statements to Eve Thornton that led her to file her lawsuit. The Court ruled at summary judgment that proof of the breach of contract could only include Defendant's conduct that occurred after the parties executed the Settlement Agreement on January 7, 2019. (Doc. No. 43.)

Mr. Johnson testified at trial that he believed that Mr. Romanelli advised Ms. Thornton in 2019 that Mr. Johnson stole from her by keeping commissions owed to her. Mr. Johnson also testified that he believed Mr. Romanelli provided inaccurate commission reports, (see Plaintiffs' Exhibit 10; Defendant's Exhibit 4), to Ms. Thornton in May 2019. Mr. Johnson testified he considered these statements to be disparaging remarks in breach of the Non-Disparagement provision of the Settlement Agreement. Mr. Johnson also admitted during cross-examination at trial that he had no proof that Defendant breached the Confidentiality provision of the Settlement Agreement.

4

Ms. Thornton testified and confirmed Mr. Romanelli provided her copies of the commission reports in May 2019, and she also explained the commission reports provided in May 2019 were the same commission reports she reviewed with Mr. Romanelli in 2018. (Plaintiffs' Exhibit 10; Defendant's Exhibit 4.) Ms. Thornton also testified that she filed her lawsuit, in part, based on the information she received in 2018, including the commission statements, and that she requested those documents in May 2019 to see if anything was wrong and analyze whether she should file a lawsuit. Ms. Thornton also testified that when she received the commission statements again in May 2019, she did not inform Mr. Romanelli why she wanted them and never had any conversations with him or any other employees of Defendant about any commissions she might be owed from Plaintiffs. Ms. Thornton admitted that the allegations in her lawsuit that Plaintiffs "converted, diverted, stole and defrauded" her were based on statements made to her by Mr. Romanelli, but the evidence does not show these statements occurred after January 7, 2019. To the contrary, on cross-examination, Ms. Thornton testified that after January 7, 2019, nobody who worked for Defendant, including Mr. Romanelli, had any conversations with her accusing Plaintiffs of stealing or even discussing whether Plaintiffs owed her commissions.

Mr. Romanelli testified that from the time he signed the Settlement Agreement on behalf of Defendant he never discussed with Ms. Thornton anything about suing Plaintiffs, did not discuss her lawsuit with her, and did not give her any indication that she should sue Plaintiffs.

After considering the witnesses' testimony, along with their credibility, and exhibits at trial, the Court finds by a preponderance of the evidence that after January 7, 2019, Mr. Romanelli did not discuss or encourage Ms. Thornton to file a lawsuit or discuss any commissions she might be owed from Plaintiffs. In May 2019, Mr. Romanelli provided Ms. Thornton the commission statements she requested and had previously seen, but he did not make any representation as to the

accuracy of those commission statements. During trial, Plaintiffs' counsel spent significant time trying to elicit testimony from all three witnesses as to the accuracy of the commission reports provided by Mr. Romanelli to Ms. Thornton. Testimony also revealed 2020 litigation filed by Ms. Thornton also contains disputes over the accuracy of the commission reports. For purposes of the Court's ruling here, it is unnecessary to make any finding of fact as to the accuracy of these commission reports.

## II. Conclusions of Law

To succeed on a breach of contract claim, Plaintiff must prove by a preponderance of the evidence: (1) a legally enforceable obligation existed between them and Defendant; (2) Defendant breached that obligation; and (3) Plaintiffs incurred damages as a result of the breach. Cent. Tel. Co. of Virginia v. Sprint Commc'ns Co. of Virginia, 715 F.3d 501, 517 (4th Cir. 2013) (citing Birtha v. Stonemor, N.C., LLC, 727 S.E.2d 1, 9 (N.C. Ct. App. 2012)).

The finding of a breach of the contract may require a court's interpretation of the terms. "A contract which is plain and unambiguous on its face will be interpreted as a matter of law by the court. If the agreement is ambiguous, however, interpretation of the contract is a matter for the [fact-finder]." Dockery v. Quality Plastic Custom Molding, Inc., 547 S.E.2d 850, 852 (N.C. App. 2001) (citations omitted); see also Abbington SPE, LLC v. U.S. Bank, Nat'l Ass'n, No. 7:16-CV-249-D, 2016 WL 6330389, at *4 (E.D.N.C. Oct. 27, 2016), aff'd, 698 F. App'x 750 (4th Cir. 2017). In an ambiguous contract, "the language used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time" can all aid the factfinder in determining the intentions of the parties. Cordaro v. Singleton, 229 S.E.2d 707, 709 (N.C. App. 1976); see also Century Commc'ns, Inc. v. Hous. Auth. of Wilson, 326 S.E.2d 261, 264 (N.C. 1985). "[A]ny undefined, nontechnical word is given a meaning consistent with the sense in which it is used in

6

ordinary speech, unless the context clearly requires otherwise." State v. Philip Morris USA Inc., 685 S.E.2d 85, 91 (N.C. 2009) (internal quotation marks and alteration omitted).

The Court notes the problematic nature of Plaintiffs' failure to admit the Settlement Agreement into the record. The Court on multiple occasions throughout trial confirmed admitted exhibits with counsel for the parties and the Deputy Clerk. Although testimony demonstrated the existence of the Settlement Agreement, no party testified to the express obligations contained in the provisions Plaintiffs contend Defendant breached. Without evidence of these legal obligations, Plaintiffs' breach of contact claim should fail. However, in order to prevent an injustice in these particular circumstances,[1] and because the parties had stipulated to the authenticity and admissibility of the Settlement Agreement, the Court concludes as a matter of law that a legally enforceable obligation existed between Plaintiffs and Defendant.

Turning to whether Defendant breached that obligation, the Court concludes as a matter of law that Plaintiffs have failed to show a breach of the Settlement Agreement. As to the breach of the Confidentiality provision, the Court granted judgment as a matter of law at the close of Plaintiffs' case because they failed to provide any evidence to support this claim. Plaintiffs failed to identify any confidential information disclosed, and Mr. Johnson conceded as much during his testimony. For the reasons that follow, the preponderance of the evidence does not show Defendant breached their particular obligations contained in the Non-Disparagement provision.

---

[1] A stipulated fact or piece of evidence must still be presented to the fact-finder, whether a jury or judge, and made part of the trial record. See Sharkey v. Fortress Sys. Int'l, Inc., No. 20-1533, 2022 WL 2156077, at *2 (4th Cir. June 15, 2022) (affirming the district court's finding that the stipulations were not part of the case before the jury when they had neither been read into the record nor otherwise introduced into evidence). Had Plaintiffs' counsel realized the failure to admit the Settlement Agreement at trial and sought to reopen evidence to admit it, this Court would have had the discretion to do so. In light of controlling law and the unique circumstances of this case—particularly its posture as a bench trial—the Court finds in its discretion that consideration of the Settlement Agreement is appropriate. See Levy v. Lexington Cnty., 589 F.3d 708, 714 (4th Cir. 2009) (recognizing a court generally abuses its discretion by refusing to reopen a case to admit evidence "if its refusal to reopen works an 'injustice' in the particular circumstances" (citations omitted)).

As noted above, the Court need not resolve the accuracy of the commission reports for purposes of determining whether Defendant breached the Settlement Agreement's Non-Disparagement provision. Even presuming the commission report was false and presuming it constituted a disparaging statement, the Settlement Agreement did not require Defendant or Mr. Romanelli to refrain from its disclosure. The Non-Disparagement provision here carried separate burdens for the parties. Plaintiff David Thornton, as an individual, was the only party who could "*not make* . . . any critical, defamatory, slanderous, libelous, adverse, negative, derogatory, or disparaging statement . . . ." (Doc. No. 30, p. 6 (emphasis added).) By contrast, Plaintiff Alda and Defendant Italian Shoemakers, as companies, only had an obligation to "*instruct* its officers, employees, managers and sales representatives *to refrain from making* any critical, defamatory, slanderous, libelous, adverse, negative, derogatory, or disparaging statement . . ." (Id. (emphasis added).) Mr. Romanelli, who was not a named party in the prior lawsuit, did not execute the Settlement Agreement on behalf of himself individually and did not have any individual obligations, unlike Mr. Thornton. And the Non-Disparagement provision also did not obligate *Defendant*—or its agents—to "not make" any disparaging statements. Only Mr. Thornton had that obligation under the plain terms of the parties' agreement. The fact that Mr. Romanelli may have made disparaging statements by providing the arguably inaccurate commission statements does not establish a breach of the Settlement Agreement by Defendant.[2] Finally, none of the testimony at trial indicated Defendant—as a company—failed to "instruct" anyone to refrain from making disparaging comments. The gravamen of Plaintiffs' evidence focused on whether Mr. Romanelli

---

[2] The Court already determined as fact that after the parties executed the Settlement Agreement, Mr. Romanelli did not encourage Ms. Thornton to file a lawsuit or discuss any commissions she might be owed from Plaintiffs. Even if Plaintiffs had proven these statements by a preponderance the evidence, Plaintiffs' still fail to prove this constitutes a breach because Defendant was not obligated to "not make" these statements, only "to instruct" others "to refrain" from doing so.

8

made disparaging comments; and without any evidence that Defendant breached its obligation to "instruct" others "to refrain from making" disparaging statements, Plaintiffs have not shown a breach of the Settlement Agreement. Accordingly, Defendant is entitled to a verdict and judgment in its favor on Plaintiffs' claim for breach of contract.

### III. CONCLUSION

After trial in this matter, the Court therefore **ORDERS**, **JUDGES**, and **DECREES** that Defendant Italian Shoemakers, Inc., did not breach the Settlement Agreement and is entitled to **JUDGMENT** in this matter.

**IT IS SO ORDERED**.

Signed: July 29, 2024

Frank D. Whitney
United States District Judge